## Trefts *versus* King.

A father was an agent of the plaintiffs to purchase a piece of land, and received some money to pay on account: his son afterwards purchased the land with the knowledge of the father, and received a deed for it. In an ejectment for the land, brought by the plaintiffs against the father and son, the Court charged the jury that the knowledge by the son of the trust might be inferred from the relation of father and son existing between the defendants, and from their transactions as to the contract between the plaintiffs and the father, and the other circumstances of the case: *Held*, that such instruction was not a ground of error.

ERROR to the Common Pleas of *Cambria county*.

This was an ejectment by George S. King & Co., against J. Adam Trefts and J. John Trefts, to recover a tract of land containing 160 acres.

C. Horner had been the owner of the land in dispute. On the 12th February, 1846, Horner entered into an article of agreement with *J. Adam Trefts* for the sale of it to him. This purchase,

the plaintiffs alleged, was in trust for Geo. S. King & Co. J. John *Trefts*, son of J. Adam Trefts, afterwards, on the 15th April, 1846, bought the land from Horner and got a deed for it, and gave his notes either for the whole or part of the purchase-money. J. Adam Trefts, the father, was a party in the notes. It was contended on the part of J. John Trefts, that he *ought* not to be affected by any arrangement between King & Co. and J. A. Trefts, of which he had not notice. It was contended that the only evidence of the trust was the receipt dated February 9, 1846, hereafter referred to, which remained in the possession of King & Co., and that the contents were never made known to him.

It was alleged on the part of King & Co., that the notes of J. A. Trefts were for *the balance* of the purchase-money, after applying $150 received from King & Co.

The certificate or declaration of trust by J. Adam Trefts, dated February 9, 1846, was to the effect that the purchase of the land about to be made by him from Christian Horner, was for George S. King & Co., and that he had received a draft for $150 to pay on the same. Endorsed on it was an admission that the draft had been returned, and that he had received $150 *in cash* for the same purpose, signed by J. Adam Trefts, and dated Feb. 11, 1846.

Testimony was given by a witness that J. John Trefts wanted to sell him part of the land in the fall of 1846. "He told me his father had bought the land from Horner; that his father had got the money from King. I wanted to know whether he could make a good title; he said he had or would get a good deed from Horner. He never said he had purchased the land from George S. King & Co.; he said his father had worked for King, and had got money to pay for the land. J. Adam Trefts said he had given King a receipt for money he had earned, because he could not get his money from King in any other way. I bought part of the land from J. John Trefts; the contract was rescinded."

Also, that at another time *both* of the defendants came to the witness about the purchase; that the witness told them of the receipt to King. They both assured him that he would get a good title; said they had got money from King for ore, and that was the reason the receipt was given; that no money could be got in any other way. They were both concerned in showing and selling the land.

Another witness testified that *J. A. Trefts* said that he had purchased the land for King. *J. John Trefts was not present at this conversation.* They both appeared to be concerned *about the ore* contract. J. A. Trefts said he had got money from King to pay the hand-money; but that King was indebted to him, and if

[Trefts *v.* King.]

he did not pay him at a certain time, he would apply the money to pay his debts.

The *defendants'* counsel requested the Court to charge the jury, that even if J. Adam Trefts did purchase as a trustee, there is no evidence that J. John Trefts had any notice of the trust; and as he had obtained a deed from the holder of the legal title, the plaintiff cannot recover in this action.

TAYLOR, J., charged, *inter alia :*—" If J. John Trefts took the legal title from Horner, in consummation of the contract with his father, J. Adam Trefts, *and with notice of the trust* existing between George S. King & Co., and the latter, his claim under the conveyance from Horner, would be no bar to a recovery in this action. If, on the other hand, he gave his notes and took the conveyance from Horner, in good faith as a purchaser, without notice of the trust, the plaintiffs could not recover, and the defendants would be entitled to your verdict.

" We refuse to give the instruction requested. It is the *fact of knowledge*, rather than the kind of evidence by which it is proved, that is here important. *Knowledge* of the existence of the trust, at the time he gave his notes and took the conveyance, as it would make J. John Trefts a party to a fraud, would be, in this case, sufficient notice; and such knowledge may be inferred from the relation, and the transactions of the father and son on the subject of this contract, and the land in controversy, and other circumstances in evidence. The legal test, as to the amount of testimony necessary to establish any ordinary question of fact, as we submit this to you, is the sufficiency of the evidence to satisfy the judgment and conscience of the jury."

It was assigned for error :—1. That the Court erred in their answer to the point submitted by defendants' counsel.

2. In charging the jury, " that notice to J. John Trefts might be inferred from the relation and transactions of father and son on the subject of this contract, and the land in controversy, and other circumstances in evidence."

*Foster* and *Banks*, for plaintiffs in error.
*Miles*, contrà.

The opinion of the Court was delivered, Oct. 25, by

COULTER, J.—There was very full evidence of the trust; that is, that John J. Trefts took the conveyance from Horner with knowledge that his father, J. Adam Trefts, had purchased for King, and that King had furnished the money to make the first payment. But this evidence, and the evidence of the trust, were very fairly submitted to the jury by the Court. They also instructed the

[Trefts *v.* King.]

jury that if John J. Trefts knew that the land had been contracted for by Trefts the elder, for the benefit of King & Co., and that the money which he, Trefts the elder, paid on the contract was got by him for that purpose from King & Co.; that in such case, Trefts the younger would not be a *bonâ fide* purchaser without notice. The amount of evidence necessary to establish notice of the trust, is not for us to determine; that was the province of the jury, and they have settled it. There was some evidence beyond the fact of their being father and son living in the same family. The judge told the jury that they ought to consider the relation of the parties, being father and son, and their transactions in relation to the contract, and all the other evidence in the cause. This instruction was right. In regard to such transactions, it is impossible to shut our eyes to the relation of the parties. John J. could have inquired any day from his father how he held the land, and the most natural thing in the world is to believe that he did. But there was other evidence, and from the whole the jury have determined. It is not for us to interfere as to the amount or weight of evidence. All that was submitted to them was lawful evidence. There is no particular kind of evidence necessary to prove notice: anything that proves knowledge; that is, anything which constitutes legal evidence. And where knowledge exists, it is guilty knowledge in such transactions. The contract is *malâ fide.* We think the instruction of the Court right, and I may add that it seems to me that the jury, as well as the Court, did most righteously in the matter.

Judgment affirmed.