## Reese *v.* Reese.  Hart, Lee & Co.'s Appeal.

[Marked to be reported.]

*Husband and wife—Gift—Assignment of judgment.*

The transfer of a judgment by a husband to a wife at a time when the husband is out of debt, is a valid gift. The consideration of natural love and affection will sustain it, although no money is paid for it.

*Credit obtained by fraud—Declarations—Judgment.*

A judgment transferred by a husband to a wife at a time when the husband is out of debt, will not be affected by subsequent declarations and misrepresentations made by the husband in order to procure goods, if the wife has not been privy to such declarations and misrepresentations.

Argued April 11, 1893.  Appeals, Nos. 162 and 163, July T., 1892, by Hart, Lee & Co., and Wells, Bowman & Co., creditors, from order of C. P. Luzerne Co., Oct. T., 1889, No. 683, in Reese v. Reese, distributing funds arising from sheriff's sale. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Exceptions to auditor's report distributing proceeds of sheriff's sale. Before RICE, P. J.

The auditor, C. F. Bohan, Esq., found the following facts:

"1. That, for about four and one half years prior to the 4th day of March, 1889, William B. Reese was engaged in the business of keeping a general store in Plymouth borough in this county. And that for about seven months prior to the 4th day of March, 1889, and for some time thereafter, said Wm. B. Reese was also engaged in the business of hardware at Taylorville, in Lackawanna county.

"2. That on the 4th day of March, 1889, said Wm. B. Reese, by private sale, sold out his general store in Plymouth, including all book accounts due him from his then and former customers,

to Benjamin Reese and Elizabeth Jones, who subsequently carried on that same business under the firm name of Jones & Reese. That on the day of said sale, and in consideration thereof, the said Wm. B. Reese received no money from Jones & Reese, but received from them an obligation containing a confession of judgment for the sum of six thousand one hundred and thirty-three and ninety one hundredths dollars, which said obligation was duly executed by said Elizabeth Jones and Benjamin Reese.

"3. That on the 22d day of August, 1889, said Wm. B. Reese duly assigned said obligation, referred to above, to his wife, Mary Reese, which said obligation with the assignment, on the same day, was duly filed and judgment entered thereon in the court of common pleas of Luzerne county to No. 683 October term, 1889, in favor of William B. Reese, assigned to Mary Reese, and against Elizabeth Jones and Benj. Reese. That there was no valuable consideration, but that there was a good consideration for this said assignment.

"4. That in February, 1890, a fire occurred in the store of said Jones & Reese whereby their stock of goods, which was insured for the sum of five thousand dollars, was so much destroyed that the insurance companies, on April 23, 1890, paid to said Jones & Reese the sum of twenty-three hundred and eighty-nine and twelve one hundredths dollars, the amount agreed upon to cover their loss. That after said fire Jones & Reese changed their place of business to a store across the street, and there continued until April 24, 1890.

"5. That on April 24, 1890, an execution was issued on the judgment, No. 683, October term, 1889, above referred to, against said Jones & Reese, whose stock of goods was sold out by the sheriff on May 1, 1890, to Michael Cannon, Esq., attorney for the plaintiff in the execution, for the sum of nineteen hundred and eighty-four and fifty one hundredths dollars. That, subsequent to the sale, Mary Reese, the plaintiff in said judgment and execution, carried on the said business formerly conducted by Jones & Reese and sold out as aforesaid.

"6. That before the sale and after the issuing of the execution above referred to, attachments under the act of March 17, 1869, and its supplements, were issued out of the court of common pleas of Luzerne county in the following entitled cases,

viz.: (*a*) Hart, Lee & Co. v. Benj. Reese and Mrs. Elizabeth Jones, defendants, and Wm. B. Reese and Mary Reese, garnishees, No. 653, May term, 1890. (*b*) Wells, Bowman & Co. v. Same, No. 658, May term, 1890. (*c*) Levy, Bros. & Co. v. Benjamin Reese and Mrs. Elizabeth Jones, trading as Jones & Reese, No. 705, May term, 1890. (*d*) Bixler & Correll v. Same, No. 718, May term, 1890.

" That these attachments were founded upon allegations of fraud committed, or about to be committed, by defendants. That rules to show cause why the said attachments should not be dissolved were taken out in each of said cases, which rules were subsequently discharged by the court.

" 7. That the money realized from said sale having been paid to the sheriff by agreement of counsel, it was allowed to remain with the sheriff with like effect as if paid into court, and the undersigned was appointed by the court to distribute said fund. That counsel, representing the said attachments, claim the fund here for distribution alleging 'that the note upon which the judgment was obtained and sale had, was without consideration ; that whatever consideration there was failed; that the note was fraudulent, and that the proceedings had on said judgment were for the purpose of delaying, hindering and defrauding creditors.'

" 8. [That the insurance money referred in the fourth finding, supra, was retained by Jones & Reese until about ten days or two weeks after the sheriff's sale, when it was paid to Mary Reese.] [5]

" 9. [That at the time of and prior to the transfer or sale of the business from W. B. Reese to Jones & Reese, Jones & Reese had had no dealing with Hart, Lee & Co. or Bixler & Correll, and that the indebtedness for which the several attachments were issued in this case was all incurred subsequent to said transfer or sale, and that the creditors had notice of a change in the firm, if not of the persons who composed the new firm.] [6]

" 10. [That the execution on the judgment upon which the sale was had in this case was issued for the purpose of protecting the debt of the plaintiff, Mary Reese, therein.] " [7]

The auditor's conclusions of law were as follows :

" 1. [That the obligation given by Jones & Reese to Wm.

B. Reese, upon which the judgment was obtained and sale had, was for a valuable consideration, valid, and not fraudulent; that the assignment by Wm. B. Reese to Mary Reese of said obligation was for a legal consideration and not in fraud of creditors; that the execution issued by Mary Reese upon said judgment was not for the purpose of hindering, delaying and defrauding creditors, but to legally protect her vested rights in said judgment; that, while there is testimony that excites suspicion, yet, on the whole, considering the great latitude allowed in proving alleged fraud, we are unable to connect Mary Reese with any fraud or fraudulent design, and conclude that the weight of evidence pronounces this a valid and lawful proceeding, untainted by fraud.] [34]

"2. [That the fund in this case for distribution, after deducting the fees of the auditor and the sheriff's and prothonotary's costs, be awarded to Mary Reese, the execution creditor in the judgment on which the sale was had and fund realized, and that each of the several parties contesting for this fund pay their own bills for subpœnaing and attendance of witnesses at the audit.]" [35]

Exceptions, among others, to the conclusions of law and fact as in brackets were dismissed by the court in the following opinion by RICE, P. J.:

"It is argued that the order of court discharging the rule to dissolve the attachments was a conclusive adjudication that all of the allegations were sustained, which was binding, not only on the defendants, but also on the plaintiff in the judgment and execution alleged to be fraudulent. We are unable to adopt this conclusion. The parties to the issue raised by the rules to dissolve the attachments were the defendants and plaintiffs in the attachments, and the adjudication was simply to the effect that enough of the allegations of fraud were sustained by the evidence then presented to entitle the plaintiffs to maintain the attachments, but, of course, subject to all prior valid liens. These allegations were (1) That the defendants were about to assign, etc., their goods by means of a sheriff's sale on a fraudulent judgment in favor of William B. Reese, assigned to Mary Reese; (2) that the debts for which the attachments issued were fraudulently contracted. In order to sustain the attachments it was necessary for the plaintiffs to

establish one or the other of these allegations, but it was not necessary to establish both. We are still of opinion that there was sufficient evidence of the latter allegation, because the credit was given to the defendants upon the faith of representations, in which, to say the least, there was suppression of part of the truth concerning their indebtedness, where they were in duty bound to state the whole truth in the matter. But it does not necessarily follow that the judgment in favor of W. B. Reese assigned to Mary Reese was without adequate consideration, and fraudulent. That was a question which, so far as she was concerned, could be conclusively adjudicated only on a distribution of the fund realized by the sheriff's sale. She had no stand in court to have the attachments dissolved. The learned auditor, after a full hearing of the parties to be affected, has found that there is not sufficient evidence to sustain this allegation of the attaching creditors, and no request has been made for a jury trial. We cannot say that his conclusion upon the question of fact was clearly wrong. Most of the evidence tending to impeach the bona fides of the transactions consists of declarations and acts of the defendants and of W. B. Reese, after the note had been assigned to her and entered by record, and we are unable to say that the auditor erred in holding that there was not sufficient evidence to connect her with a fraudulent scheme to defraud the defendant's creditors to make these declarations competent to affect her rights : Kintzel v. Kintzel, 133 Pa. 71 ; Wolf v. Kohr, Ibid. 13 ; Unangst v. Goodyear Co., 141 Pa. 127 ; Tisch v. Utz, 142 Pa. 186. Furthermore, there was a conflict of testimony as to some of the material facts, and in such cases it has repeatedly been said that the auditor who had an opportunity to observe the manner in which their testimony was given is better able to judge of the credibility of the witnesses than the court. For these reasons we conclude that we would not be justified in disturbing the auditor's findings."

*Errors assigned* were dismissal of exceptions, quoting them.

*Edmund G. Butler*, *Harris B. Hamlin* with him, for appellants.—The judgment was not only not known to appellants and other creditors, but its existence was kept carefully concealed and in effect denied.

When a person furnishes another with property upon which to obtain credit, or with which to do business, and states to this person's creditors that he had given it to him, or induces credit by representing that " it is all right," he will commit fraud if, when the credit is furnished, he seizes these goods or the goods thus obtained upon execution upon judgment confessed for that particular property as to which the statements were made, and the judgment itself will be fraudulent as to those creditors. And these representations were mainly made while Reese held the note.

The garnishees had a right to move to dissolve the attachment: Finch v. Bullock, 10 Phila. 318 ; Morris v. Turner, 3 Clark, 423; Act of March 17, 1869, P. L. 10; April 29, 1891, P. L. 35. The discharge of the rules to dissolve the attachments was res judicata, therefore.

There is one law as to transactions between husband and wife—there is another law as to the same transactions between that husband and a stranger. Where a husband confesses judgment to the wife she must prove it to be honest. She must prove that she owns property she claims. The presumption is that the property she claims is her husband's : Wilson v. Silkman, 97 Pa. 509; Winter v. Walter, 37 Pa. 155 ; Aurand v. Schaffer, 43 Pa. 363; Bucher v. Ream, 68 Pa. 421; Topley v. Topley's Admrs., 31 Pa. 328 ; Walker v. Reamy, 36 Pa. 410.

*Michael Cannon,* for appellee.—It was conclusively shown that neither W. B. Reese nor Mary Reese was indebted to appellants in this case at any time after the transfer of the note in question, and the auditor so found, and his findings of fact were confirmed by the court.

The report of an auditor will not be disturbed, where his findings of fact are approved by the court below, except upon flagrant error: Bull's Ap., 24 Pa. 286 ; Harbison's Est., 145 Pa. 458 ; Gilbert's Ap., 78 Pa. 266.

Confirmation of the auditor's report by the court gives it additional force : Fahnestock's Ap., 104 Pa. 49.

OPINION BY MR. JUSTICE GREEN, October 2, 1893 :

In this case the findings of fact made by the auditor have been affirmed by the court below, and they are therefore to be treated

with the same effect as if they had been determined by the verdict of a jury. As to the consideration of the judgment given by Jones & Reese to W. B. Reese, there can be no question. It was given for the agreed value of the entire stock of goods and accounts owned by W. B. Reese, and duly sold and transferred by a formal bill of sale to the purchasers, who took possession, sold the goods, collected such of the accounts as they could, and applied, as much of the proceeds as was necessary, to the payment of the debts of W. B. Reese, until all his debts were paid. The transfer of the judgment by W. B. Reese to his wife, made several months later, was a valid transfer because he was then out of debt, and might lawfully make the transfer to his wife. The consideration of natural love and affection would sustain it, although no money was paid for it. This being so she took a good title to it by the transfer and could lawfully hold it against him or any one else. Of course, if the transfer had been made for the purpose of cheating and defrauding the creditors of W. B. Reese, it would have been fraudulent and void as against them, but he had no creditors, and the auditor has specifically found that it was not made for any fraudulent purpose, and we think the testimony fully justified the finding.

No trouble seems to have arisen about the matter until after the fire which destroyed the stock of goods of Jones & Reese, some six months later, in February, 1890. After that a new stock of goods was purchased by Jones & Reese, part of which was sold to the firm by the appellants in this case. These are the goods upon which execution was levied on the judgment transferred by W. B. Reese to his wife in August, 1889. It was during the time, after the fire, and before the issuing of this execution, that the various declarations and representations of W. B. Reese, Daniel Jones and Benjamin Reese were made, upon the faith of which, it is alleged by the appellants, their goods were sold. It certainly must be conceded that if this controversy were between the appellants and any or all of these parties, it would probable have to be adjudged that these purchases were fraudulently made. While assuming to give a truthful statement of the debts and liabilities of Jones & Reese, the judgment debt held by Mrs. Mary Reese was suppressed and withheld. The agreement to apply the insurance money

to the payment of goods purchased was violated by paying it to Mrs. Reese, and in that regard the conduct of Jones & Reese and W. B. Reese cannot be justified in any point of view. If W. B. Reese was the legal owner of the judgment, and was endeavoring to enforce his execution lien on the fund in court, which is the proceeds of the stock of goods sold to Jones & Reese, we do not think, in view of his own admissions on the witness stand, that he could be permitted to claim any part of the fund. He certainly ought to be, and we think would be, estopped from making any claim under this judgment, after having participated, as he admitted he did, in the declarations and representations which induced the appellants and other merchants to sell to Jones & Reese the goods out of which the fund in court arises. Such conduct is not only highly reprehensible but should deprive the guilty parties of all right to take any part of the goods or their proceeds as against the parties who sold them.

But the difficulty we have, and which confronted the auditor and the court below, is, how is all this to affect the rights of Mrs. Reese. She has been emphatically exonerated by the auditor, of all participation in the transactions of W. B. Reese and Jones and Benjamin Reese, in making the new purchases of goods, and, in several findings, the auditor declared that there was no evidence to show that she had colluded, or concerted, with Jones & Reese, in any fraudulent agreement or design to hinder, delay or defraud their creditors. A careful reading of the testimony satisfies us that this finding is warranted by the evidence. We have not been referred to any testimony disproving these findings and have failed to discover any. The declarations of W. B. Reese and Daniel Jones that were offered in evidence, were made long after the title of Mrs. Reese had accrued and were not binding upon her and therefore could not affect her title. While it is true she paid nothing for the judgment, she could take a perfect title by gift, if her husband was free of debt and there was no fraudulent purpose in making the assignment. At the time the assignment was made, there is not the slightest reason to suppose that there was any purpose in the mind of any of the parties to defraud the creditors of any of them. W. B. Reese had creditors when the judgment was taken, but they were all paid off out of the

proceeds of the sale. The circumstances which gave rise to the subsequent purchases of goods did not then exist, and did not arise, until after the fire which did not occur until six months and upwards had elapsed. Whatever purpose there was to buy goods upon improper and untruthful representations, originated after the fire, which of course was an unanticipated event. None of the testimony as to what then occurred reaches to Mrs. Reese, no declarations, representations, acts or conduct of hers are given or offered in evidence. If her title by transfer from her husband was free from all taint of fraud, as is found by the auditor, properly as we think, it was good for all purposes, and was entitled to as effective a defence as if she had paid money for it.

We think the auditor and court below were right in holding that the attachment proceedings were not conclusive upon her rights as holder of the judgment. Her title was not in issue and she had no hearing upon it under that process. Under the act of 1869 it is the alleged fraudulent act of the debtors that gives rise to the proceeding, and is the subject of controversy. While it may well be in this case that Jones & Reese did contract their debts for the goods in question fraudulently, it does not follow from that proposition that Mrs. Reese's title to the judgment was fraudulently obtained, and therefore an adjudication of the former fact is no adjudication of the latter. Upon a patient and careful examination of the case we think it was correctly disposed of by the auditor and court below.

The decree of the court below is affirmed at the cost of the appellants.

[Marked to be reported.]