## Cameron, Secretary of Banking, *v.* Peoples' Bank of Maytown.

### Smith's Appeal.

Argued May 20, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

554

Peter P. Zion, with him S. V. Hosterman, for appellant.—A holder of certificates of deposit is not chargeable with bad faith where he purchased them, with his funds, at approximately seventy-three per cent of their face value, from a vendor, reputedly wealthy, to whom he was related by marriage and whose husband and sons were bankrupt: Gray v. Bank, 29 Pa. 365; Sloan v. Banking Co., 67 Pa. 470; Lancaster Co. Nat. Bank v. Garber, 178 Pa. 91; Second Nat. Bank v. Morgan, 165 Pa. 199; Phelan v. Moss, 67 Pa. 59; State Bank v. McCoy, 69 Pa. 204; Moorehead v. Gilmore, 77 Pa. 118; McSparran v. Neeley, 91 Pa. 17.

Where a married woman acquired three certificates of deposit from payees (her son and daughter) and her husband, more than four months later is adjudged bankrupt, the court may not treat such certificates as property of her husband as against a purchaser for value: Holcomb v. Bank, 92 Pa. 338.

It is apparently the burden of one attempting to reclaim a specific thing or fund to so identify that thing or fund into its new or altered form so that the court may definitely state that the original fund or thing has been earmarked: Com. v. Tradesmen's Trust Co., 250 Pa. 372; Com. v. Tradesmen's Trust Co. (No. 2), 250

Pa. 378; Lebanon Trust & Safe Deposit Bank's Assigned Est., 166 Pa. 622; Com. v. State Bank, 216 Pa. 124.

*B. J. Myers,* of *Zimmerman, Myers & Kready,* with him *Charles G. Baker,* for appellees, cited: Meyer v. Shickler, 47 Pa. Superior Ct. 282; Second Nat. Bank v. Hoffman, 229 Pa. 429; Com. v. McHenry, 92 Pa. Superior Ct. 162; Com. v. Trust Co., 250 Pa. 372; Webb v. Newhall, 274 Pa. 135; Lifter v. Earle Co., 72 Pa. Superior Ct. 173; Schwartz's App., 291 Pa. 463; Kuhns v. Bank, 68 Pa. 445.

OPINION BY MR. JUSTICE KEPHART, September 30, 1929:

The Peoples' Bank of Maytown, which was being liquidated by the secretary of banking, had issued a number of certificates of deposits; two sets of these were in dispute. Both sets were presented for payment by appellant, Dr. Smith, who had purchased them from Ida Hoffman. The first set, or eleven of these certificates, had been purchased with money (belonging to the Hoffman Leaf Tobacco Company, a partnership) which had been embezzled by the husband of Ida Hoffman, who was also one of the partners. The other certificates were not so purchased. Payment to appellant on both sets was resisted, by creditors of the tobacco company and the husband, through their trustees in bankruptcy. The court below held that the equitable title to the eleven certificates purchased with the partnership funds was in the tobacco company and title to the other set in the trustee of the husband, and refused appellant's claim. A different question is involved as to each set of certificates.

First, as to the set of eleven certificates claimed by the trustees of the bankrupt tobacco firm: That company, with all its partners, was adjudged bankrupt on May 17, 1926. On the last day of March, 1926, M. R. Hoffman, one of the partners, and husband of Ida, re-

ceived a check, payable to the firm, for $22,000, which he endorsed in the partnership's name, and purchased with this money the eleven certificates of deposit in question, for his wife. In December, 1926, his son went to Philadelphia and sold to appellant these certificates, together with the other set of three certificates, having a total face value of $11,721.68, for $8,500. At this time all the certificates were overdue.

The court below found that appellant was the father-in-law of one of the partners of the tobacco company; that he knew of the financial condition of the firm and all its partners; and that he had knowledge of the misappropriation of the $22,000 check. These findings, being supported by evidence, have the weight of the verdict of a jury: Glenn v. Trees, 276 Pa. 165; Rokeach v. Polish Co., 295 Pa. 366. The court below awarded the proceeds of the eleven certificates to the trustees in bankruptcy of the tobacco company.

The money of the company was fraudulently used to buy the certificates, and, in legal contemplation, Ida Hoffman held them as constructive trustee for the firm. The question here is whether there was sufficient evidence from which the court below could find the purchaser of the securities from her, knew, or should have known, the title transferred was tainted with fraud, and that an equitable title existed in a third party. It is a universal rule that if one purchases property from a trustee, with notice of the trust, he should be charged with the same trusts as the trustee from whom he purchases: Perry on Trusts, section 217, and cases there cited. This rule applies to constructive as well as express trusts.

Notice need not be actual. A purchaser is chargeable with notice of the trust where the facts and circumstances existing at the time of the purchase, within his knowledge, are such as would put a man of ordinary prudence upon inquiry and require him to make an investigation, and he fails to do so (39 Cyc. 562; Trefts

v. King, 18 Pa. 157) ; no particular kind of evidence is necessary to constitute notice.

As has been pointed out, the parties lived in Lancaster, and Michael, Jr., arranged with Dr. Smith for the sale to him, in Philadelphia, of the certificates of deposit held by Michael, Sr.'s, wife, Ida Hoffman. The price paid was much less than their face value, or the sum paid for their original purchase: In re Hill, 187 Fed. 214. Dr. Smith knew when he purchased the certificates that the bank was in liquidation, and that Ida's husband, with Michael, Jr., was in bankruptcy. There was also some evidence that Dr. Smith had known of the misappropriation. The mere fact that his daughter was married to one of the bankrupts, who may have been concerned in the fraud, would not be sufficient to charge him with notice: Stewart County Bank v. Adams, 96 Georgia 529; see Clark v. Roberts, 206 Mass. 235. Nor would the fact that such bankrupt as his son-in-law was connected with the fraud. All this testimony may, however, be taken into consideration in determining whether notice was received.

A person who is about to purchase securities, or other choses in action, cannot wilfully close his eyes to information, or means of information, which he knows is at hand and which would show a defective title. He must act in good faith and the circumstances may be such as to impose on him the duty of inquiry. To charge a purchaser with notice he must have actual knowledge of the defect, or knowledge of such facts that his act in taking title amounted to bad faith. Mere negligence is not sufficient to impeach good faith. But it, with other matters, may be inquired into as bearing on the credibility and the weight of the testimony in support of good faith, which is required affirmatively to appear. If it appears he purposely and consciously avoided inquiry to evade notice or knowledge of a defect in the title, his act in this respect amounts to bad faith; or, to use the language of the federal Supreme Court in Good-

man v. Simonds, 20 How. 343, "such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith": Connelly v. Bank, 192 Iowa 876, 185 N. W. 887; Paika v. Perry, 225 Mass. 565, 114 N. E. 830; Bank v. Mason, 192 Iowa 1048, 186 N. W. 30; Kipp v. Smith, 137 Wis. 234, 118 N. W. 848. Here there was ample to put Dr. Smith on inquiry.

The firm, having traced its funds into these eleven certificates, is entitled to claim them as the property of that firm: Com. v. Tradesmen's Trust Co., 250 Pa. 373, 376; Webb v. Newhall, 274 Pa. 135; Lifter v. The Earle Co., 72 Pa. Superior Ct. 173.

The court below found that eleven of the certificates held by Dr. Smith were purchased with funds belonging to the tobacco company, and we are not convinced, after reading the evidence, that the court was in error in holding that Dr. Smith knew enough to put him on inquiry as to who really owned the certificates.

A different question is raised as to the three certificates acquired in January, 1926, from M. R. Hoffman, Jr., and Mrs. Schadt, amounting to $664.63. At that time there was no misappropriation of money, no bankruptcy proceedings, nor does it appear in the record that Michael, Sr., the husband of Ida Hoffman, was then indebted to anyone. The certificates were transferred to her before maturity, and to appellant in 1926 when the other eleven were purchased. The court below held the proceeds to be the property of the husband's creditors.

The theory of the lower court was that since Ida Hoffman was a married woman, the certificates were presumably purchased, not with her money, but with that of her husband; that since the creditors of the latter were resisting the award, the burden was on Dr. Smith, the wife's vendee, to show by clear and satisfactory proof that the certificates were paid for out of her separate estate or received as a valid gift; and, inasmuch as no attempt was made to meet this burden, the credi-

tors of the husband were entitled to the proceeds. This was based on the line of cases represented by Wilson v. Silkman, 97 Pa. 509; Billington v. Sweeting, 172 Pa. 161; Heiges v. Pifer, 224 Pa. 628; Longbottom v. Emory, 261 Pa. 168; Taylor v. Paul. 6 Pa. Superior Ct. 496; Grandison v. Gregg, 64 Pa. Superior Ct. 70.

There is no question but that, if the husband is solvent or does not contemplate insolvency, he may make a valid gift of property to his wife: Reese v. Reese, Appeal of Hart, Lee & Co., 157 Pa. 200; Sutton v. Guthrie, 188 Pa. 350. She may purchase such securities with her own estate and credit, or receive them in any other legitimate way; but, in a contest between a married woman and her husband through creditors to decide the ownership of property, the burden is on her to establish her ownership to such property by clear and satisfactory evidence (Billington v. Sweeting, supra; Heiges v. Pifer, supra); that is, the moment the claims of creditors appear as covering the period of acquisition of the property, the obligation is cast on her to make good her claim.

The rule as to the burden of proof, which related only to married women when there was a contest with the husband's creditors, originated when the change was made in the status of such persons as to property rights. Originally, title to the property of the wife was vested in the husband; she herself had no separate estate. The Act of April 11, 1848, P. L. 536, initiated a change in this impediment to ownership. The act permitted her to acquire or hold a separate estate gotten by will, descent, deed, or otherwise, before or during coverture. There is, however, no presumption in favor of the existence of such an estate when in contest with her husband's creditors,—rather the contrary: Wilson v. Silkman, supra. In such contests the wife must affirmatively establish ownership, not only because of the ease with which the husband's creditors may be defrauded, but because, ordinarily, it is impossible for her to have

a possession separate and distinct from that of her husband. Hence one of the most obvious and prominent marks of proprietorship is, in her case, not only wanting, but such possession is usually attributed to the husband; a presumption of his ownership naturally follows by which his credit is increased: Gamber v. Gamber, 18 Pa. 363. The Act of June 3, 1887, P. L. 332, and the Act of June 8, 1893, P. L. 344, enlarged the powers of a married woman with respect to ownership of property. The latter act stated in this regard: "Hereafter a married woman shall have the same right and power as an unmarried person." An unmarried woman, in possession of property, under a claim of title, has a right prima facie to the presumption of ownership when that ownership is attacked; she need not prove title until evidence has been introduced showing it was not in her. But our cases after this act did not relax the rigor of the prior rules; as a matter of public policy we held that the interest of a married woman in her husband's welfare and the preservation of the family was so apparent, and the temptation for wrongdoing so great, that these could not be wiped out merely through the words of an act of assembly which enlarged the wife's right to hold property; and when the title to property claimed by her was attacked, through her husband's creditors, the rule heretofore announced as to proof of title still prevailed.

But, in all our cases, so far as we have been able to discover, these rules have been applied only to property that was in the apparent joint possession of both husband and wife, or where the origin of title in her was traced from or through the husband. On these facts notice of an interest in the latter may be found. The instances under which the question of the wife's title arose had variously to do with loans by the wife to the husband, with loans for which either notes or mortgages were given by the husband to the wife; with title to land which the wife claimed was bought for her with her own money or with money given to her, and with the

title to personal property such as horses, carriages, or items of common household property. The only case where the husband's possession did not appear was that of Heiges v. Pifer, supra, where it merely appeared that the wife got the money to pay for the land from her brother-in-law. We have not been able to discover any cases where the rule has been applied to the possession of personal property complete in the wife or without being subject to an inference of joint possession, or to a title not traced through the husband.

In the cases on which the court below relied, the contest was between the husband's creditors and the wife herself. Here the contest is between the creditors and the wife's vendee. In Jack v. Kintz, 177 Pa. 571, it is true the property was disputed between a judgment creditor of the husband and the wife's grantee, but in compelling the vendee to meet the same burden of proof cast on the wife, we distinctly stated that it was because the vendee had actual knowledge of the husband's (and so his creditor's) equity in the property.

In the present case, there was no evidence that appellant had actual notice of any equity in favor of the husband at the time he purchased the three certificates in question from the wife; nor is there anything in the record sufficient to charge him with constructive notice of any such equities, unless we adopt a rule analogous to the authorities cited above, and hold that the fact of coverture alone is in itself constructive notice. The mere fact that the price paid by appellant was below the face value of the certificates, or their market value, had there been one, would not be sufficient to charge notice, nor would the added fact that these securities were bought by appellant at the same time as the others, when he knew the latter were bought with partnership money. This factor would not affect the entire sale. Even if appellant had made inquiry at the only available source, the partnership, he would have discovered no equitable claim against the three certificates here involved.

Here we have securities acquired by the wife, in her name, and, so far as the record discloses, in her possession, purchased at a time when there is no evidence the husband was indebted, much less insolvent. We held in Longbottom v. Emory, supra, that the burden as to the wife's substantiating her claim by full and satisfactory proof related only to instances where the creditors' rights had accrued at the time she acquired title.

Whether or not this is a negotiable instrument is immaterial. We are here faced with the clear question whether the mere fact of coverture is enough to charge a purchaser from the wife with notice of equities in favor of the husband. To decide this in the affirmative would be to put an intolerable burden on those dealing with married women at the present day. Married women are now accustomed to deal in property of large value; many have investments of their own, in land or securities, which for obvious reasons must often become the subject of transfer, for liquidation or reinvestment. To place any such burden on their vendees would result, from a business standpoint, in a very real practical restriction on the woman's right to own and deal in property, and so defeat the purpose of the statutes giving her those rights. Purchasers would be slow to buy what might, through no fault of their own, be successfully claimed by the husband's creditors. In a contest between the wife and the creditors, it is feasible for her to explain the manner in which she acquired the property; hence she suffers no real injury; but the same explanation may be impossible for her vendee.

A different situation is presented as to property of which the wife did not have the apparent exclusive title, and of which she and her husband had common possession—such, for example, as household goods. The vendee's equities may also be less where he has actual knowledge that the wife acquired title from or through her husband, or with money furnished to her by him. Since, however, these additional factors do not appear

in the present case, they need not be further discussed. On the face of the certificates, the wife had a legal title by endorsement, and no evidence was presented which would connect the husband in any way with them. Since coverture alone should not be sufficient to charge a purchaser with knowledge of any possible equities in the husband, we can apply the general rule applicable to sales that one buying goods from an individual having legal title gets a clear title free from equities where he has no notice of any secret trusts in favor of others.

Even as to negotiable instruments, or a transfer of a chose in action subject to defenses of prior holders, this encumbrance on transfer or assignment does not embrace equities which grow out of independent or collateral transactions: 8 C. J. 479; Stewart v. Tizzard, 3 Phila. 362. The only defenses which the assignee or a purchaser has to guard against in such cases are, first, those which have arisen since the execution of the note, and which are not collateral, but which relate to the note itself; and, second, those which are inherent in the note, and which would show it to have been void ab initio, such as fraud, mistake, absence of sufficient consideration, etc.; Renwick v. Williams, 2 Md. 356, 364; Eversole v. Maull, 50 Md. 95, 104. The equities between prior parties to the instrument must be distinguished from those in a third person, the reason being that the assignee can always go to the debtor and ascertain what claims or equities he may have against the bond, or other chose in action, which he is about to purchase from the obligee; but he may not be able with the utmost diligence to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries: Murray v. Lylburn, 2 Johns. Ch. (N. Y.) 441, 442. The rule as to defenses does not include the rights of third persons which are merely latent and do not appear from an inspection of the instrument assigned: Mohr v. Byrne, 135 Cal. 87, 90, 67 Pac. 11.

Admitting Dr. Smith knew of the husband's insolvency when the transfer was made in December, this circumstance alone would not be sufficient to affect him with knowledge that, at the time the securities were purchased, the husband was indebted, and that presumably the securities were purchased with his money. This is a contest between the wife's vendee and the husband's creditors. The burden which fell on her by reason of coverture is not passed over to the vendee, without showing he knew, or should have known, of the equitable interest or tainted character (as to creditors) of the title purchased: Keichline v. Keichline, 54 Pa. 75.

The decree of the court below is to be modified so that appellant shall be entitled to participate in the distribution on his claim as represented by the three certificates purchased from Michael, Jr., and Mrs. Schadt. Costs to be paid from the fund for distribution.