Powell et al., Appellants, *v.* Third National Bank & Trust Company of Scranton.

Argued March 6, 1941.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
RHODES and HIRT, JJ.

*Carl Carey,* for appellants.

*M. D. Mackie,* of *Gunster, Mackie & Murphy,* for appellee.

OPINION BY KELLER, P. J., April 23, 1941:

This was an action of assumpsit brought by "James J. Powell and T. A. Donahoe, Trustees" against Third National Bank and Trust Company of Scranton, Pa., to recover $2041.71, alleged to be on deposit to their credit in the defendant bank, but which it refused to pay on their order. The bank's defense was that it had applied $2015.27 of said amount to the payment of a *demand* note for $1900 held by it, signed by M. J. Dempsey, as a joint and several maker with W. W. Walsh and Keystone Brewing Company, Dempsey and Walsh being the president and secretary respectively of said Brewing Company and virtually in control of it; the said money so deposited by said plaintiffs as trustees being the money of said M. J. Dempsey and subject to appropriation by the bank to his debt to it. The plaintiffs replied that the said M. J. Dempsey had assigned his interest in said deposit to his wife, Anna G. Dempsey.

By agreement, trial by jury was waived under the

Act of 1874, P. L. 109, and the case was submitted to the decision of President Judge LEACH. Judge LEACH duly filed his decision, stating his findings of fact and conclusions of law and holding that plaintiffs were entitled to judgment for $26.44; and after disposing of exceptions filed by the plaintiffs he entered judgment in their favor for that amount. Plaintiffs appealed. The judgment will be affirmed.

No specific exceptions were filed in the court below to the findings of fact of the trial judge; nor were any specifications of error assigned to such findings of fact in this court. Appellants contented themselves by filing exceptions to the *refusal* of the trial judge to find certain facts as requested by them, which we agree were properly refused by him.

We have carefully read the evidence and in our opinion it supports the findings of fact of the trial judge, which were as follows:

"1. The plaintiffs deposited a fund of twenty-five thousand dollars ($25,000) in their name as trustees.

"2. The said fund arose through various transactions in the sale of a property known as the Keystone Brewing Company.

"3. Ten thousand dollars ($10,000) of the fund was to be used towards reconditioning the plant, and fifteen thousand dollars ($15,000) was to be held for M. J. Dempsey.

"4. During the operations of the Keystone Brewing Company an indebtedness of nineteen hundred dollars ($1900) arose on a note to the defendant bank.

"5. During the course of the procedure which resulted in obtaining the trust fund, the bank was in position to enforce its lien but was persuaded to accept in lieu of the legal proceedings a note signed by the said M. J. Dempsey and W. W. Walsh.

"6. After the said trust fund became deposited in the bank, the said M. J. Dempsey assigned his right in the said fund to his wife.

"7. When the defendant charged the note against the trust fund which had been the property of M. J. Dempsey, trustees refused to accept the charge and instituted this suit.

"8. There is no evidence that the said Anna G. Dempsey, wife of M. J. Dempsey, ever paid any sum of money for the said assignment, or that she had any funds that she did not derive from her husband, M. J. Dempsey.

"9. The said M. J. Dempsey admitted his insolvency at the time of the transaction except for the funds in the hands of the trustees."

We are also of opinion that these findings support and sustain the conclusions of law and judgment of the court.

The agreement under which $25,000 was paid to plaintiffs as trustees, in the settlement of the sale of the brewing company's property, was signed by M. J. Dempsey and L. G. Smith Co., Inc.,—the purchaser of the property—and provided, inter alia, that Dempsey was to direct and bring about the conveyance of an undivided one-half interest in the brewing company property, and Smith, Inc. agreed to purchase the same. As a part consideration of said purchase, Smith, Inc. was to pay Dempsey $5000 cash, receipt of which was acknowledged, and $15,000 additional was to be paid him within ten days from the approval of a proposed bond issue covering the plant, (of which $25,000 in bonds were to be given Dempsey), in manner following: The conveyance of Dempsey's undivided half interest was to be made for the purpose of the contract by T. A. Donahoe, Attorney, and the $15,000, plus $10,000 which might be used by Smith, Inc. for the improvement of the plant, was to be deposited by Smith, Inc. in the defendant bank in the name of James J. Powell and T. A. Donahoe, in escrow for the fulfillment of the contract; $15,000 was to be deposited at once, of which $10,000 might be used by Smith, Inc. for the improvement of the plant, equip-

ment, etc.; "the balance of said escrow fund intact at the time of the approval of the papers may be paid to the said M. J. Dempsey as part of the $15,000 payment, and the said L. G. Smith Co., Inc. agrees to pay the balance necessary to complete the $15,000 payment," which it did by depositing the remaining $10,000 in the defendant bank on June 4, 1936 in the name of the plaintiffs as trustees.

It thus clearly appears that M. J. Dempsey was the owner of, and had the sole beneficial interest in $15,000 of the fund deposited to the credit of the plaintiffs in the defendant bank pursuant to said agreement, to be *paid* him at the approval of the papers. Whatever may have been the purpose for the circuity of action adopted, once the deposit was made in the defendant bank of Dempsey's money, the bank was entitled to defalcate and set off [1] against it his demand note for $1900 that it held against him, which with interest then due amounted to $2015.27.

We do not deem it necessary to quote at length from the discussion of the learned trial judge leading up to his first and principal conclusion of law: "In a contest between the wife and her husband's creditors a voluntary conveyance is presumed to be fraudulent and the burden of proof is upon the wife to show by clear and satisfactory proof that the conveyance is fair and that the husband's liabilities were not out of proportion to his then remaining assets"; nor to incorporate herein the opinion of the court below dismissing the plaintiffs' exceptions and entering judgment on the findings and decision. They fully sustain the judgment appealed from, and may be referred to if deemed advisable. The position of the court below was that the burden rested on the plaintiffs of proving by clear and satisfactory

---

[1] See *Aarons v. Public Service B. & L. Assn.*, 318, Pa. 113, 114, 118, 178 A. 141; *Duffy v. B. & L. Assn.*, 122 Pa. Superior Ct. 113, 184 A. 549, affirmed, 325 Pa. 127, 129-135, 189 A. 307.

evidence that the voluntary assignment or conveyance by Dempsey to his wife of the proceeds of sale of his property was fair and not fraudulent as respects his creditors, and that this burden had not been met; and that no sufficient proof of the wife's ownership of the interest in the property conveyed by him, free of attack by his creditors, had been established.

The conclusion of law above quoted is supported by numerous decisions.[2]

The wife's claim to the $15,000 deposited in the defendant bank for her husband's use was based largely on the following facts: Her husband, who was the owner of certain real estate had conveyed it to his wife and himself as tenants by entireties. (There was no proof, however, that when this was done the husband was solvent, or that his liabilities were not out of proportion to his remaining assets, or that she had paid any part of the purchase money, or had given any valuable consideration for the conveyance.) During the reorganization proceedings of the brewing company it became necessary for Dempsey to raise $7500. This was done by a mortgage on the property held by himself and his wife as tenants by entireties; which on final settlement was paid off, without any cost or loss to the wife. For this contingent liability, which was thus discharged without loss to her, she received from her husband the $5000 down payment to him, the bonds for $25,000 delivered him on account of the consideration for the sale of his interest in the brewery property, and $13,000, out of the $15,000, deposited to his credit in defendant bank.

[2] *American Trust Co. v. Kaufman,* 276 Pa. 35, 39, 119 A. 749; *Queen-Favorite B. & L. Assn. v. Burstein,* 310 Pa. 219, 165 A. 13; *Peoples Savings & Dime Bank & Trust Co. v. Scott,* 303 Pa. 294, 154 A. 489; *Cameron v. Peoples Bank of Maytown,* 297 Pa. 551, 147 A. 657; *Raub Supply Co. v. Brandt,* 323 Pa. 119, 186 A. 751; *Farmers Trust Co. v. Bevis,* 331 Pa. 89, 91, 200 A. 54; *Taylor v. Paul,* 6 Pa. Superior Ct. 496, 500, 501; *Braley v. First Natl. Bank,* 105 Pa. Superior Ct. 418, 423, 161 A. 485.

Dempsey, when called by the defendant without objection on the part of the plaintiffs, admitted his insolvency after these transfers and assignments to her were made (64a-65a).

There is no merit whatever in the appellants' contention on the argument that Dempsey could place his property, either real or personal, out of the reach of his creditors by a mere oral declaration made to his wife that he held it for her use or benefit, he, at the same time, retaining full possession and control of it and disposing of it as he saw fit. That would be a new, and if approved, no doubt a popular, way of cheating one's creditors.

The learned court below, in its opinion disposing of the exceptions came to the conclusion that "the trial judge had no right to consider the testimony of M. J. Dempsey who was called as for cross-examination by the defendant. There was no objection made at the time, but such testimony is inadmissible and the court should not have permitted it under the Witnesses Act of 1887, P. L. 158, *Bell v. Throop*, 140 Pa. 641, and many other cases.

"The exception to the 9th finding of fact is sustained. The said finding is as follows: 'The said M. J. Dempsey admitted his insolvency at the time of the transaction except for the funds in the hands of the trustees.'

"Sustaining the exception to the foregoing finding does not change the result. It is still the duty of the plaintiffs, who hold money of M. J. Dempsey, to prove beyond a reasonable doubt that the property belonged to the wife, from money not derived from her husband, and that the transaction was not designed to defraud the husband's creditors.

"Viewed in the most favorable light, Anna Dempsey got a half interest in a property held by the entireties, by her husband and herself, and risked a mortgage of $7,500 on her property. She received more than the amount of the mortgage after paying the plaintiffs'

claim, and still retained all of the property. This transaction arose when there was no evidence that her husband had any other property than the property she acquired. The burden of proof is upon her in a contest against her husband's creditors."

Although not necessary in order to sustain the judgment we are of opinion that the evidence of M. J. Dempsey was admissible and it justified the ninth finding of fact.

While the purpose back of the action was to obtain the fund, which had been applied by the bank to the payment of M. J. Dempsey's note, for the benefit of his wife, the action was in the name of the plaintiffs as depositors. She was not made a party to it. The plaintiffs were not, and did not become, *trustees* for her. They were dry trustees for him. She got her right or interest in the fund, if any, by assignment from him. But that did not make her a *cestui que trust* or *beneficiary* of the trust estate. She was merely the *assignee* of the beneficiary or cestui que trust of a dry trust. She took her assignment subject to any prior claims or demands of the bank against the assignor; and the bank was entitled to show by the assignor the priority of its claim, as over against the demand of the plaintiffs. The facts distinguish it from *Bell v. Throop,* 140 Pa. 641, 21 A. 408, and the cases following it.

In referring in its opinion to the burden of proof resting on the plaintiffs, instead of using the phrase "beyond a reasonable doubt" the court might have said that it was their duty to "prove her [the wife's] claim by evidence clear and satisfactory to a degree beyond that required of other creditors, and leave no doubt of its good faith and its truth in fact" *(Dalley's Assigned Est.,* 200 Pa. 140, 142, 49 A. 755; *American Trust Co. v. Kaufman,* 276 Pa. 35, 39, 119 A. 749). The expression complained of did not appear in the conclusions of law (see supra), and did not affect the correctness of the decision and judgment.

The bank was not required to deliver its note against Dempsey to the plaintiffs as long as they disputed the validity and legality of its payment as a charge against the deposit. Section 74 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, 56 PS §175, cited by appellants, refers to the exhibiting of the note to the person from whom payment is demanded, and then provides "and when it is paid [it] must be delivered up to the party paying it". The demand note held by the defendant bank was payable to it as payee "at said Third National Bank and Trust Company of Scranton, Pa.", and did not have to be presented to the maker. It could be charged against his funds in the bank's possession. When the legality of the payment is admitted, or established, there will be no trouble about the delivery of the note.

Except to the extent indicated, the assignments of error are overruled; and the judgment is affirmed.