# Wilson et al. *versus* Silkman.

97　509
172　164

97　　　509
21 SC ²616

1. Where a man transfers either real or personal property to his wife, the presumption is that it is a gift from him to her.

2. Where a husband confesses judgment to a trustee in favor of his wife, it is necessary for the wife, in a contest with her husband's creditors whose debts existed when the judgment was confessed, to establish that the judgment was given to her bona fide to secure a debt of the wife from the husband from the separate estate of the wife; in the absence of such proof the judgment will be deemed fraudulent and void as against such creditors.

March 29th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, of *Lackawanna county :* Of January Term 1881, No. 163.

Feigned issue, wherein Wilson and others were plaintiffs and Catherine Silkman was defendant, to determine the validity of a judgment for $11,755.12, confessed by Daniel Silkman to William Shoemaker, in trust for Catherine Silkman, his wife.

Upon the trial, before HAND, A. L. J., the plaintiffs proved the following facts :

On June 4th 1878, Daniel Silkman confessed a judgment for $1000 to Almira and Sarah A. Silkman, which was the first lien upon his property. This judgment was originally entered in Luzerne county; it was transferred to Lackawanna county, and under an execution issued in the latter county, the fund in dispute was produced by a sale of his real estate. On June 10th 1878, Daniel Silkman executed a judgment note for $11,543.50 to William Shoemaker, in trust for Catherine Silkman, his wife, on which note judgment was entered in Lackawanna county, November 21st 1878, in favor of Shoemaker, in trust for Catharine Silkman, for $11,755.12. Subsequently, in 1878 and 1879, Wilson and others obtained judgments against Daniel Silkman for debts which existed on and prior to June 10th 1878. The evidence showed that in June 1878, the firm of Silkman, Winton & Co., of which Daniel Silkman was a member, was indebted to the verge of insolvency, though their credit was at that time fair, and they suspended in the following September. On December 12th 1879, execution was issued on the said judgment of $1000, in favor of Almira and Sarah A. Silkman, under which certain real estate of Daniel Silkman was sold at sheriff's sale, February 10th 1880, and purchased by Mrs. Catherine Silkman, wife of Daniel Silkman, for $10,150. Mrs. Catherine Silkman received, the same day, an assignment of the Almira and Sarah A. Silkman judgment, under which the execution issued, and at her request the sheriff made a special return, that he had taken "the receipt of Catherine Silkman for $9990, being the amount of bids on the

[Wilson *v.* Silkman.]

within described real estate, less $160 costs, it appearing that the said Catherine is a lien-creditor of the said defendant, and as such, she is entitled to receive said amount as the proceeds of such sale, as by reference to certified list of liens hereunto ·attached, will more fully appear."

Wilson and others filed exceptions to this return; the matter was referred to an auditor, and, pending the reference. the court, on the petition of Wilson et al., awarded this issue, which was framed in two counts, the first involving the question whether Silkman was at the time of giving the confession of judgment, justly indebted to his wife in the sum for which it was confessed, the other, whether the judgment was given with intent to encumber his real estate and hinder, delay and defraud his creditors.

The defendant offered no evidence.

The plaintiff presented the following points:

1. That when a judgment is taken in the name of a trustee for a wife against her husband, it is necessary for the wife, in a contest with creditors of the husband (as in this case), to establish that the judgment was taken bona fide, to secure a debt to the wife from the husband from moneys of the separate estate of the wife. In the absence of such proof the judgment must be regarded as fraudulent and void as against such creditors. Answered in the negative.

2. That under all the evidence in this case the verdict of the jury must be in favor of the plaintiff.

Ans. "Refused."

The defendant presented, inter alia, the following points:

1. That there is no evidence to warrant the jury in finding that the said Daniel Silkman was not, at the time of the making and delivery of the judgment note in question, justly indebted to said Catherine Silkman in the sum mentioned therein, and was so indebted at the time his real estate was sold.

Ans. "Affirmed."

3. That there is no evidence to sustain the allegation upon which the issue in this case was granted.

Ans. "Affirmed."

The court charged the jury, inter alia, as follows:

"We have been requested on the part of the plaintiffs in this case to give you binding instructions that your verdict must be in favor of plaintiffs. * * * We decline to charge you as they request us to charge for the following reasons: Because the issue as framed in this case puts the burden of proof upon the plaintiffs to show fraud either directly, or such a chain of circumstances as will raise a question of fraud for you, and upon the examination of the testimony we are satisfied that there is nothing in the testimony showing any fraudulent transactions. * * * But notwithstanding the relation of these parties, after a full examination of

[Wilson v. Silkman.]

the evidence, we find nothing either by positive or negative testimony from which fraud can be inferred so far as this case is concerned. There is no evidence here at all with reference to the poverty of this defendant; there is no evidence here at all of any attempt at collusion; there is no evidence, as we can discover in this whole case of any transaction which of itself the court can put its hands on and say it is a badge of fraud, or is sufficient to leave it as a question of fact to you. We have, therefore, taken this case away from the jury, and given binding instructions that the verdict must be in favor of the defendant. * * * Therefore we say to you when the court lay down the law to the jury, they are bound to take it from the court and follow their instructions. Your verdict in this case will be for the defendant."

Verdict accordingly for the defendant, and judgment thereon.

The plaintiff took this writ of error, assigning for error the answers to points and charge of the court as above given.

*R. W. Archbald* and *S. B. Price*, for the plaintiffs in error.— Upon proof by the plaintiffs that they were existing creditors of Daniel Silkman, at the time of the confession of this judgment to his wife, and that Daniel Silkman, was at that time in failing circumstances, the burden of proof was upon the wife to show a valid consideration for the judgment: Grabill v. Moyer, 9 Wright 530; Keeney v. Good, 9 Harris 355; Black v. Nease, 1 Wright 440; Baringer v. Stiver, 13 Id. 129; Gault v. Saffin, 8 Id. 307; Aurand v. Schaffer, 7 Id. 363

*A. H. Winton* (with him *E. N. Willard*), for the defendant in error.—Under the form of the issue and the pleadings the burden of proof was upon the plaintiff in the issue to show that there was no sufficient consideration for the judgment, or that it was intended to defraud the plaintiffs. The judgment note was given in accordance with the provision of the Act of April 15th 1851, sect. 22, Purd. Dig. 1007, pl. 21. Every presumption is in favor of the bona fides of the judgment, and the party alleging fraud must prove it. Business dealings between husband and wife are now treated just as are the transactions between ordinary debtors and creditors; as, in the latter case, when the bona fides of such transactions is attacked, the fraud alleged must be clearly and distinctly proved, so likewise in the former : Rechling v. Byers, 9 W. N. C. 359; Wingard v. Fallon, Id. 163; Gicker's Admr's v. Martin, 14 Wright 138; Roberts v. Guernsey, 3 Grant 237.

Mr. Justice GORDON delivered the opinion of the court, May 2d 1881.

On the 10th of June 1878 Daniel Silkman executed his judgment-note to William Shoemaker in the sum of $11,755.12 in

[Wilson *v.* Silkman.]

trust for his wife, Catharine Silkman. On this note, judgment was entered on the 21st of November 1878. At the time of the execution of the note above mentioned, Silkman was a member of the firm of Silkman, Winton & Co., which firm was largely indebted, so largely, indeed, that it appears from the evidence it was unable fully to liquidate its obligations, in other words, it proved to be insolvent.

It appears, further, that on the 4th of June 1878, a judgment was entered in the. Common Pleas of Luzerne county against Silkman, and in favor of Almira and Sarah A. Silkman, in the sum of one thousand dollars. This judgment was transferred to Lackawanna county on the 12th of December 1879; upon it execution was issued, a levy made upon the property from which the fund in controversy was raised, and sold by the sheriff to Catharine Silkman, the defendant, for the sum of $10,150, she having on the same day received an assignment of the judgment on which the sale was made. She being thus the owner of the first, as well as the second judgment against the property, claimed the right to have them receipted upon her bid. To prevent this the plaintiffs, creditors of Silkman, Winton & Co., who in the mean time had obtained judgments upon their claims, interposed, and at their instance, the issue now trying was framed.

From this summary of facts, about which there is little or no dispute, we turn to the legal question on which the case was determined in the court below.

Several assignments of error have been presented for our consideration, but as the ruling of the court below on the plaintiff's first point in effect involves the whole controversy, we may confine our attention to it alone. That point reads as follows: " When a judgment is taken in the name of a trustee for the wife against the husband, it is necessary for the wife, in a contest with creditors of the husband, as in this case, to establish that the judgment was taken bona fide to secure a debt of the wife from the husband from moneys of the separate estate of the wife. In the absence of such proof, the judgment must be regarded as fraudulent and void as against such creditors."

The point thus put was refused by the court.

We hesitate not to say that in this the court made a mistake. Under the circumstances of the case, the affirmative was upon the defendant. It was for her to show that the judgment executed to the trustee for her use by her husband represented the proceeds of her separate estate. The contest was with her husband's creditors, and if the judgment was not founded upon a valuable consideration, however good it might be against him or his estate, it would be fraudulent and void as to contemporaneous creditors.

Before the Act of 1848, the marriage contract vested the right to the personal property of the wife in the husband. She had no

[Wilson v. Silkman.]

such thing as a separate and independent personal estate. Since that act, she may not only continue to own and hold the property she had at the time of the marriage, but she may, during coverture, acquire a separate estate.

In favor of such an estate, however, there is no legal presumption, but the contrary; the husband is presumed to be the owner of the property of which he and his wife have the joint possession. Does she purchase lands or goods, their price is presumed to come from the pockets of the husband; or does he transfer to her property, real or personal, it is presumed to be a gift from him to her. Thus the Act of 1848, whilst it makes it possible for a feme covert to have and enjoy a separate estate, raises no presumption in favor of the existence of such an estate. She must affirmatively establish that fact, and this, not only because of the ease with which the husband's creditors might otherwise be defrauded, but because, ordinarily, it is impossible for her to have a possession separate and distinct from her husband; hence one of the most obvious and prominent marks of proprietorship is, in her case, not only wanting, but such possession being usually attributed to the husband, a presumption of his ownership naturally follows by which his credit is increased. Even in a case where a widow claims property as against her husband's estate, it has been held " that she must show by evidence which does not admit of a reasonable doubt, either that she owned it at the time of her marriage, or else acquired it afterwards by gift, bequest or purchase. In case of a purchase after marriage, the burthen is upon her to prove distinctly that she paid for it with funds which were not furnished by the husband." BLACK, J., in Gamber v. Gamber, 6 Harris 363. Again it was said by the same learned justice in Keeney v. Good, 9 Harris 349, " To bring the property of a married woman under the protection of the Act of 1848, it is made necessary by the letter, as well as by the spirit of the statute, to prove that she *owns* it. She must identify it as property which was hers before marriage, or prove how she came by it afterwards. Evidence that she purchased it, amounts to nothing unless it be accompanied by clear and full proof that she paid for it by her own separate funds. In the absence of such proof, the presumption is a violent one that her husband furnished the means of payment."

Like doctrine will be found in Gault v. Saffin, 8 Wright 307, and many other cases to which we need not revert.

Applying the rule thus established, to the case in hand, and the error of the court below is obvious. Here is the confession of a judgment in the sum of $11,000 by a husband to a wife, at a time when he was in fact insolvent. She furnishes no proof that she had so much as a single dollar to invest in that or any other kind of property, and yet by all rule she was bound to show by clear

1 OUTERBRIDGE—33

[Wilson *v.* Silkman.]

and full proof that it was confessed to her for a valuable consideration proceeding from her own separate estate, acquired either independently of her husband, or, if from him, at a period antecedent to his indebtedness. The inquiry is not only a legal but a natural one, How did she get the right to demand so large a sum of money from her bankrupt husband? If, indeed, she has nothing else to depend upon than the presumption arising from his act in the confession of the judgment, she is leaning upon a broken staff, for the husband's confession of a judgment to his wife is, prima facie, little better than the confession of a judgment to himself.

The presumptions are all against the defendant's right to the money in controversy, and unless she proves to the satisfaction of a jury, that the consideration for the judgment against her husband was money, or other property, from her separate estate, she cannot maintain her claim.

The judgment is reversed, and a new venire ordered.