## Lithgow v. Taylor.

*Robert W. Beatty* and *James Hayes Simms*, for plaintiff.
*E. Leroy Van Roden* and *James A. Walker*, for defendant.

MacDADE, J., March 12, 1931.—Plaintiff, Jean B. Lithgow, filed her bill in equity on November 3, 1926, to have certain real estate and the improvements thereon, of which the defendant is now the owner, decreed to be held by defendant subject to an alleged unliquidated indebtedness to plaintiff, of James T. Taylor, the husband of said defendant.

The prayers of the bill were for a decree declaring that:

(a) The real estate was purchased and the improvements thereon made by James T. Taylor in his lifetime with his funds. (b) The premises belong to the estate of James T. Taylor and are impressed with a lien in favor of plaintiff for the amount due her. (c) The defendant should be enjoined from transferring or encumbering said real estate. (d) If conveyance has been made, defendant should account for the consideration. (e) The premises should be sold and the proceeds applied to payment of the amount due plaintiff. (f) Further relief.

After hearing upon bill, answer and testimony, MacDade, J., made certain findings of fact and conclusions of law, as will more fully appear, filed July 17, 1930, and entered a decree *nisi*, hereafter quoted in the plaintiff's eighth exception.

The plaintiff now comes before the court *in banc* with the following exceptions to findings of fact, conclusions of law and decree *nisi:*

"1. Plaintiff excepts to the tenth finding of fact by the court, which is as follows: '10. There is no evidence that James T. Taylor, the decedent, was insolvent at the time of the purchase of this property, or at any other time.'

"2. Plaintiff excepts to the eleventh finding of fact by the court, which is as follows: '11. There is no evidence on the record that the money used for the purchase of the said property was that of James T. Taylor, either in whole or in part.'

"3. Plaintiff excepts to the twelfth finding of fact by the court, which is as follows: '12. There is no evidence on the record from what source the money used in the purchase of the property was acquired.'

"4. Plaintiff excepts to the first conclusion of law by the court, which is as follows: '1. Where property is acquired from a third person by a husband and wife and title to the said property is taken by them as tenants by entireties, each owns the whole of the said property and no presumption of fraud arises from such transaction, especially in that the title was acquired subsequent to the date of the acknowledgment of his indebtedness to the creditors.'

"5. Plaintiff excepts to the tenth conclusion of law by the court, which is as follows: '10. However, equity will not lie in this case from the evidence, because it appears that the plaintiff relies upon section seven of the Act of May 21, 1921, P. L. 1045, which requires proof of actual intent, as distinguished from intent presumed by law, to hinder, delay and defraud creditors; and if she [plaintiff] relies upon section four of the said act, she may not prevail under it because there is no evidence of the insolvency of the deceased at the time of the conveyance to him and his wife or of any conveyance made or obligation incurred by James T. Taylor, the deceased.'

"6. Plaintiff excepts to the eleventh conclusion of law by the court, which is as follows: '11. The plaintiff has no standing, even if she prevailed otherwise, for it appears that she has no lien on the decedent's land for her debt and, hence, may not pursue it to pay her debt. There is no allegation that she has brought suit to continue her lien for more than one year. The present suit is not brought under the act to continue the lien.'

"7. Plaintiff excepts to the twelfth conclusion of law by the court, which is as follows: '12. The bill of complaint should be dismissed with costs upon the plaintiff.'

"8. Plaintiff excepts to the action of the court in entering the following decree:

" 'And now, July 17, 1930, the above matter coming on for a hearing upon bill, answer and testimony, together with oral arguments and briefs, after due consideration thereof, the court doth order, adjudge and decree that the bill of complaint be and is hereby dismissed, costs to be paid by the plaintiff; further we do order, adjudge and decree that the prothonotary be and is hereby ordered and directed to notify forthwith the respective parties or their counsel of the filing of this decree *nisi*, and, if exceptions are not filed to same in due course, the said prothonotary shall enter of record a final decree *sec. reg. et sec. leg.'* "

We have examined these exceptions, which we shall treat collectively, very carefully and fail to perceive wherein the chancellor has erred.

In our judgment, regarding the authorities cited us and the able argument made at bar, no presumption of fraud arises from a transaction where real property is acquired from a third person by a husband and wife and title to the said property is taken by them as tenants by entireties, for each owns the whole of the said property, especially in that the title was acquired subsequent to the date of the acknowledgment of his indebtedness to the creditors.

And yet we do not see how equity will lie in this proceeding, from the evidence adduced, because it appeared that this plaintiff relied upon section seven of the Act of May 21, 1921, P. L. 1045, which requires proof of actual intent as distinguished from intent presumed by law, to hinder, delay and defraud creditors; and, if the plaintiff relies upon section four of the said act, she may not prevail under it because there is no evidence of the insolvency of the deceased, whose estate is not made a party hereto, at the time of the conveyance to him and his wife or of any conveyance made or obligation incurred by James T. Taylor, the deceased.

An additional reason for the futility of pressing this proceeding is that the plaintiff has no standing, even if she prevailed otherwise, for it appears that she has no lien on the decedent's land for her debt (not even liquidated) and, hence, may not pursue it to pay her debt. There is no allegation that she brought this suit to continue her lien within one year. This suit or proceeding is not brought under the act to continue the lien. Indeed, there is no suit against the debtor's estate.

Why, therefore, should not the bill of complaint be dismissed with costs upon the plaintiff as the chancellor recommended?

Therefore, under these circumstances, why should there be any burden placed upon this defendant to prove that the title to real property obtained by her by operation of law was acquired with her own funds, especially where there is (1) no proof of insolvency on the part of the debtor; (2) no proof or evidence presented indicating a fraudulent intent upon the debtor, and (3) where the title to the real estate has never vested in the debtor?

At the outset, plaintiff is confronted with the fact that in a suit against B she is attempting to prove a debt against A. Unless the plaintiff is able to overcome this one factor she is out of court. It matters very little whether the proceeding be under the Act of 1921, or, as the plaintiff claims, a general creditor's bill. The latter form of remedy is even more limited than the proceedings under the Act of 1921. Fundamentally, the theory in each case remains the same. All creditors' bills are based on the fact that the persons who filed such bills are creditors of the person whose property they seek to recover. The legal liability must be either admitted or established, and it can neither be established nor admitted except by or against the party who contracted the obligation or persons who are privy to that interest. Whether the proceedings be a creditor's bill or under the Act of 1921 is entirely beside the point.

The plaintiff had a note of the decedent. Real estate was in the name of the decedent and his wife as tenants by the entireties during the former's lifetime, and the wife acquired title by right of survivorship or operation of law. The title to this piece of real estate prior to the conveyance to husband and wife was never in the decedent, but came from a stranger. No evidence was presented indicating that the husband was insolvent at the time he took title with his wife. There was no evidence presented that the wife knew of any insolvency. There was no state of facts from which any fraud might be inferred. There was nothing to indicate that the husband advanced the entire consideration or any part of the consideration for the property or that the wife's title was acquired for a nominal consideration.

The record required proof on the part of the plaintiff to at least show a state of facts from which fraud might be inferred. The plaintiff draws an unreal distinction between the Act of 1921 and the general creditor's remedy. The case of Houseman v. Grossman, 177 Pa. 453, which is relied upon by the plaintiff, clearly indicates what is required for a creditor's bill and shows the plaintiff herein has failed to prove her case.

In that case, paragraph one of the syllabus reads: "In Pennsylvania a creditors' bill may be maintained to subject the land of a debtor which has been conveyed away in fraud of creditors to the claims of the latter, by setting aside the fraudulent conveyance, if the debtor is dead, and the creditors have a lien upon the land." In that case it was also held that a creditors' bill must set forth three things: first, that the land is that of the debtor; secondly, it has been conveyed away in fraud of creditors; and, thirdly, that the creditor had a lien upon the land.

In the case at bar the land was never the husband's—he never had title except as a tenant by the entireties; secondly, he never having had title, it could never have been conveyed in fraud of creditors; thirdly, no evidence of fraud was presented nor was any state of facts produced from which fraud might be inferred; and, finally, the creditor could not have a lien against this land because under the most favorable state of facts she had a claim only against the husband.

There can be no doubt that a claim against the husband does not operate as a lien against property held in tenancy by the entireties. The right with regard to this property is so clearly established that a joint deed by husband and wife is sufficient to pass title free from the effect even of a judgment entered against the husband individually.

In the case of Roan v. Bingaman, 12 D. & C. 673, quoting from Beihl v. Martin, 236 Pa. 519, the court said: "It is this striking peculiarity of the estate—the entirety alike in husband and wife—that operates to exempt it from execution and sale at the suit of a creditor of either separately. The enforcement of such process would be the taking of the property of one to pay the debt of another. But may not the interest of either be seized in satisfaction of his or her appropriate and exclusive debt? Before answering, let us clearly understand what is here meant by interest. For convenience of illustration, take the case of a husband. Towards everybody in the world except the wife he has exclusive possession during her lifetime, and his right to the enjoyment of the estate during this period may not be interfered with at the suit of his creditor. So much is conceded, and has been expressly decided by this court in a number of cases, notably in McCurdy v. Canning, 64 Pa. 39. With possession denied a purchaser at an enforced sale during the joint life of the parties to the estate, what is there to acquire by purchase? Nothing but a bare expectancy, a chance that the husband may survive the wife and have the entirety to himself. May that expectancy be made the subject of a judicial sale?"

The following cases have been called to our attention by the commendable industry of counsel for the plaintiff and, after an examination of them, we are not convinced that they are so controlling as to warrant us in differing from the chancellor's findings and conclusions: Hook v. McCune, 184 Pa. 292; Fowler's Appeal, 87 Pa. 449.

At this point we say that, of course, if the plaintiff had made out a case entitling her to relief, the remedy pursued would have been proper. The chancellor did not dismiss the bill because the relief requested was improper generally, but because the plaintiff had not made out a case entitling her to relief or a remedy. As the chancellor said: "There is no evidence in this case

other than proof of a claim and the conveyance by a stranger to husband and wife and the death of the former."

Other cases cited by plaintiff were Chisolm v. Moore, 49 Pa. Superior Ct. 132, and Curtis v. Olds, 250 Pa. 320. In the case of Harlan v. Maglaughlin, 90 Pa. 293, it was stated that in order to shift the burden to the wife there must be evidence of an intent on the part of the husband to defraud at the time of the conveyance. See, also, Billington v. Sweeting, 172 Pa. 161, Bower's Appeal, 68 Pa. 126, Adams v. Bleakley, 117 Pa. 283, and Wilson v. Silkman, 97 Pa. 509.

With regard to Bower's Appeal, 68 Pa. 126, it was decided prior to the married woman's property act and there is every indication in later decisions of our Supreme Court that this case would not be followed today.

· The case of Adams v. Bleakley, 117 Pa. 283, showed that there was definite proof on the part of the plaintiff that the husband testified he was greatly indebted at the time of conveyance and that in purchasing the property he paid the entire consideration and directed that the deed be given to the wife, while in the case of Wilson v. Silkman, 97 Pa. 509, there was also the fact of insolvency at the time of the conveyance and the further fact that this case was decided long before the married woman's property act. Although still followed in the decision of Cameron v. Peoples' Bank of Maytown, 297 Pa. 551, the extent to which it will be followed was definitely marked by that case.

Speaking of the rule placing the burden on the wife, the Supreme Court, in Cameron v. Peoples' Bank of Maytown, 297 Pa. 551, 560, expressly said: "But, in all our cases, so far as we have been able to discover, these rules have been applied only to property that was in the apparent joint possession of both husband and wife, or where the origin of title in her was traced from or through the husband. On these facts notice of an interest in the latter may be found. The instances under which the question of the wife's title arose had variously to do with loans by the wife to the husband, with loans for which either notes or mortgages were given by the husband to the wife, with title to land which the wife claimed was bought for her with her own money or with money given to her, and with the title to personal property such as horses, carriages, or items of common household property. The only case where the husband's possession did not appear was that of Heiges v. Pifer, supra [224 Pa. 628], where it merely appeared that the wife got the money to pay for the land from her brother-in-law. We have not been able to discover any cases where the rule has been applied to the possession of personal property complete in the wife or without being subject to an inference of joint possession, or to a title not traced through the husband."

It is to be noted that in this case, where the Supreme Court is speaking of property in the apparent joint possession of husband and wife, it is dealing with personalty, where the fact of exclusive ownership may be in either and it becomes a question of proof in whom the actual title is, and it is only proper that those in the best possession of the facts should be able to prove it.

The other class of cases indicated by the Supreme Court where the burden will be placed on the wife is where there is clear proof that the property is traceable through the husband.

It is obvious that these rules of law cannot apply to a situation where real estate is held as tenants by the entireties, as in the case at bar, and title in any event is not traced through the husband.

Whether the proceedings herein be under a general creditors' bill in equity or under the Act of 1921 (the record discloses that all parties agreed to proceed thereunder), the plaintiff is still required to prove such a state of facts

as would entitle her to *prima facie* relief; unless the plaintiff has established a *prima facie* case, there is nothing which the defendant need deny.

And now, March 12, 1931, upon consideration of the foregoing proceeding, it is ordered, adjudged and decreed as follows:

1. All the exceptions of the plaintiff taken to the findings of fact, conclusions of law and decree *nisi* are overruled and dismissed.

2. The prayers of the bill are refused.

3. The bill of complaint be and is hereby dismissed as recommended in the decree *nisi.*

4. The costs of this proceeding are directed to be paid by the plaintiff.

5. The prothonotary is directed to notify the parties or their counsel of record of the entering of this decree.     From William R. Toal, Media, Pa.